### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| JOHN F. MARROW<br>27922 SE 24th Way<br>Sammamish, WA  98075<br><br>Plaintiff,<br><br>v.<br><br>SSOE, INC.<br>c/o Vincent P. DiPofi, Jr., Statutory Agent<br>1001 Madison Ave.<br>Toledo, OH  43604<br><br>     Defendant | Case No. 3:20-cv-01471<br><br>Judge<br><br>**COMPLAINT WITH JURY DEMAND**<br>**ENDORSED HEREON**<br><br>Corey L. Tomlinson (OH#0081894)<br>Amy J. Luck (OH#0097280)<br>Robison, Curphey & O'Connell, LLC<br>Four SeaGate, Ninth Floor<br>Toledo, OH  43604<br>T:  (419) 249-7900<br>F:  (419) 249-7911<br>ctomlinson@rcolaw.com<br>aluck@rcolaw.com<br>*Attorneys for John F. Marrow* |

Plaintiff John F. Marrow, for his Complaint against Defendant SSOE, Inc., states as follows:

### INTRODUCTION

1. This is an action by a shareholder of a privately held corporation for breach of contract, and breach of statutory and common law fiduciary duties owed by majority shareholders, officers, and directors to minority shareholders. This action arises out of Plaintiff's June 2012 resignation of employment and Defendant's partial redemption of Plaintiff's stock under duplicitous circumstances.

### PARTIES

2. Plaintiff John F. Marrow ("Marrow") is an individual resident of Sammamish, King County, Washington.

3. Defendant SSOE, Inc.("SSOE"), is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Toledo, Lucas County, Ohio.

## JURISDICTION AND VENUE

4. This action is brought in the United States District Court for the Northern District of Ohio, Western Division, pursuant to 20 U.S.C. § 1332 and § 1391.

## FACTUAL ALLEGATIONS

5. On or about October 16, 2009, Marrow and SSOE executed an Employment Agreement ("Employment Agreement"), under which Marrow became a Principal of SSOE. A true and accurate copy is attached as Exhibit 1 and incorporated herein.

6. Between December 21, 2007 and December 28, 2009, Marrow purchased One-Thousand Nine-Hundred Ninety-Five (1,995) shares of common stock of SSOE, subject to a Stock Redemption Agreement dated March 20, 1970, as amended ("Stock Redemption Agreement"). A true and accurate copy of the February 11, 2011 Compilation of Stock Redemption Agreement of SSOE, Inc. is attached as Exhibit 2 and incorporated herein.

7. In consideration for Marrow's shares of SSOE, Marrow paid at total of $117,934 in cash and executed the Cognovit Promissory Note dated December 18, 2009 ("Cognovit Note") in the amount of $324,933.00. A true and accurate copy of the Cognovit Note is attached as Exhibit 3 and incorporated herein.

8. Paragraph 2.4 of the Employment Agreement, titled "Early Retirement or Voluntary Termination," states in pertinent part:

> In the event Employee desires to terminate his employment hereunder, […] he shall give such advance notice of his intention to do so as is acceptable to the Board of Directors and the date of his intended actual termination of employment, subject, however, to the provisions that under no circumstances may the Board of Directors require more than six (6) months' advance notice. Effective date of termination, for purposes of this Paragraph 2.4, shall be the date finally agreed upon between Employee and the Board of Directors as to Employee's date of termination.

9. Paragraph 2.6 of the Employment Agreement, titled "Failure to Give Adequate Notice" states:

> Under the circumstances described in Paragraphs 1.3(a) and/or 2.4, Employee is required to give Employer advance notice of Employee's desire to terminate his employment hereunder […] Employee and Employer agree that these notice requirements are of the utmost importance to Employer, since time will be required for Employer to locate a person to replace Employee and/or it will take Employee time in which to conclude the work which has been assigned to him. It is further agreed that in the event Employees fails to give the required notice, as hereinbefore described, such failure shall be a breach of this Agreement and Employer will be damaged in an amount difficult, if not impossible, to accurately determine. Therefore, Employee agrees that in the event of such a breach, he will pay, as liquidated damages and not as a penalty, an amount equal to twenty five (25%) percent of the amount which Employer is obligated to pay Employee under the terms and conditions of a certain Stock Redemption Agreement dated March 20, 1970 (the "Redemption Agreement"), as amended. In the event the provisions of this Paragraph 2.6 are applicable, the amount which Employee owes to Employer shall be offset against the amount which Employer owes to Employee under the Redemption Agreement, with the result that Employer shall pay to Employee seventy five (75%) percent of the amount to which Employee is entitled under the Redemption Agreement."

10. On June 20, 2012, Marrow tendered his resignation letter ("Resignation Letter") to SSOE's then CEO, Tony Damon. In his Resignation Letter, Marrow notified Damon that he was "keen to work with you and the Board of Directors to agree [to] appropriate notice period arrangement[s] in order to effect as smooth and proper hand-over and succession of my current projects and duties as possible." A true and accurate copy of Marrow's Resignation Letter is attached at <u>Exhibit 4</u>.

11. After Marrow announced his intention to resign, Board Member Craig Bowie asked Marrow to outline a process for transition of Marrow's responsibilities. Therefore, on June 25, 2012, Marrow emailed Bowie, summarizing the status of Marrow's existing responsibilities and suggested a timeline to transition those responsibilities to other employees. Specifically, Marrow indicated "I would suggest a couple more weeks after vacation transitioning and handing over (Possibly to 10th August) but that is your call. I am happy to fit in with whatever works best for SSOE." <u>Exhbit 5</u>.

12. On or about June 29, 2012, SSOE convened a meeting of its Board of Directors to consider Marrow's Resignation Letter and determine Marrow's effective date of termination.

13. By correspondence dated July 2, 2012, SSOE notified Marrow that "[t]he close of workday on July 6, 2012, is considered the date of termination of employment with SSOE, Inc." See Exhibit 6. SSOE unilaterally determined Marrow's termination date.

14. Paragraph 4(a) of the Stock Redemption Agreement mandates that in the event a Stockholder's employment with the Corporation [SSOE] has terminated, "the Stockholder shall be bound and obligated to sell and the Corporation [SSOE] shall be bound and obligated to purchase all of the stock owned by said Stockholder.

15. Paragraph 7 of the Stock Redemption Agreement sets forth the method for determining the purchase price that SSOE was obligated to pay to Marrow upon termination of his employment.

16. In addition, Paragraph 7(i) of the Stock Redemption Agreement holds:

> The purchase price shall be payable in three equal annual installments, the first installment being due within one hundred twenty (120) days following the date of the event which required the Stockholder to sell and the Corporation to purchase the shares. In addition, the unpaid balance of the purchase price shall bear interest at an annual rate equal to the Wall Street Journal prime rate for the month preceding the month in which each of the installments are due. Interest shall be paid at the same time and in addition to the payment of the installment of the purchase price. The Corporation has the right to pre-pay the obligation to the Stockholder without penalty.

17. As of his effective termination date, and as set forth by the terms of the Stock Redemption Agreement, Marrow's shares in SSOE were worth $838,638.15 ($420.37 x 1,995 shares.)

18. As of his effective termination date, the balance due on the Cognovit Note was $243,597.43.

19. SSOE called in the Cognovit Note upon Marrow's termination date.

20. Marrow paid the Cognovit Note in full.

21. On or about July 3, 2012, SSOE presented Marrow with an Agreement to Purchase/Sell Stock and Units and Other Matters Relating to Resignation ("Separation Agreement"). A true and accurate copy of the Separation Agreement is attached as Exhibit 7.

22. The terms of the Separation Agreement, as drafted by SSOE, falsely claim that Marrow failed to give adequate notice of his resignation, and that SSOE was entitled to liquidated damages equal to 25% of the value of Marrow's shares, or $209,659.64. However, in the Separation Agreement, SSOE stated that it intended to "hold in escrow the sum of $209,659.64 which is the total amount of the liquidated damages under Paragraph 2.6 of the Employment Agreement. Until it is disbursed to [Marrow], if ever, such escrow amount will bear interest at the rate equal to the Wall Street Journal prime rate as of November 6, 2012."

23. On July 9, 2012, Marrow signed the Irrevocable Stock Power, attached as Exhibit 8, and as required by the Stock Redemption Agreement, granting attorney William I. Barkan, authority to transfer Marrow's 1,995 shares back to SSOE.

24. Marrow refused to sign the Separation Agreement.

25. Marrow complied with all of the terms and restrictions that survived termination of the Employment Agreement.

26. On October 25, 2012, Tony Damon wrote to Marrow:

> In approximately one week we will be sending you a check in the amount of $209,659.54, and a Promissory Note, with a principal amount of $419,319.08, which Note is payable in 2 annual installments commencing on November 1, 2013. The foregoing will be in accordance with the applicable portions of SSOE, Inc's Stock Redemption Agreement and the Employment Agreement between you and SSOE, Inc. The check and the Note, totaling $628,978.62, constitute 100% of the money owed to you by SSOE.

A true and accurate copy of the October 25, 2012 email is attached as Exhibit 9.

27. On October 25, 2012, SSOE actually owed Marrow $838,638.15, payable in three equal annual installments, as set forth in Paragraph 7(i) of the Stock Redemption Agreement.

28. SSOE paid Marrow $209,659.54 in November 2012, $223,287.41 (includes interest) in November 2013, and $216,473.47 (includes interest) in November 2014.

29. SSOE refused and continues to refuse to pay Marrow for the remaining 25% of his shares, totaling $209,659.64, plus interest from November 2012, as required by the Stock Redemption Agreement.

## COUNT ONE – BREACH OF CONTRACT

30. Plaintiff incorporates the foregoing as if fully restated herein.

31. Marrow and SSOE entered into the Employment Agreement and Stock Redemption Agreement (collectively "Principal Agreements").

32. Marrow fully performed under the terms of the Principal Agreements.

33. SSOE breached the Principal Agreements when it unilaterally determined Marrow's effective date of termination and then invoked Paragraph 2.6 of the Employment Agreement by falsely and maliciously claiming that Marrow failed to give SSOE adequate notice of his resignation.

34. SSOE unilaterally established Marrow's effective termination date with the express intent to invoke Paragraph 2.6 of the Employment Agreement.

35. SSOE's actions demonstrate malice, aggravated and/or egregious fraud.

36. Marrow suffered damages in excess of $284,120.71 as a direct and proximate result of SSOE's breach.

## COUNT TWO – BREACH OF FIDUCIARY DUTY

37. Plaintiff incorporates the foregoing as if fully restated herein.

38. SSOE's officers and Board of Directors owed Marrow a fiduciary duty.

39. SSOE, by and through its officers and Board of Directors, breached its fiduciary duty to Marrow when it unilaterally determined Marrow's effective date of termination and then invoked

Paragraph 2.6 of the Employment Agreement by falsely and maliciously claiming that Marrow failed to give SSOE adequate notice of his resignation.

40. SSOE unilaterally established Marrow's effective termination date with the express intent to invoke Paragraph 2.6 of the Employment Agreement.

41. SSOE's actions demonstrate malice, aggravated and/or egregious fraud.

42. Marrow suffered and continues to suffer damages as a direct and proximate result of SSOE's breach of its fiduciary duty to Marrow.

### COUNT THREE - BREACH OF DUTY OF GOOD FAITH UNDER R.C. § 1701.641

43. Plaintiff incorporates the foregoing as if fully restated herein.

44. SSOE's officers and Board of Directors owed Marrow a duty of good faith and loyalty.

45. SSOE's officers and Board of Directors, breached their duty to Marrow when they unilaterally determined Marrow's effective date of termination and then invoked Paragraph 2.6 of the Employment Agreement by falsely and maliciously claiming that Marrow failed to give SSOE adequate notice of his resignation.

46. SSOE unilaterally established Marrow's effective termination date with the express intent to invoke Paragraph 2.6 of the Employment Agreement.

47. SSOE's actions demonstrate malice, aggravated and/or egregious fraud.

48. Marrow suffered and continues to suffer damages as a direct and proximate result of SSOE's officers' and Board of Directors' breach of their duty of good faith and loyalty to Marrow.

## PRAYER

**WHEREFORE**, Plaintiff John F. Marrow respectfully demands judgment against Defendant SSOE, Inc., as follows:

1. Money damages in excess of $284,120.71, in an amount to be determined at trial, plus costs and interest;

2. Exemplary and punitive damages in an amount to be determined at trial;

3. Attorneys' fees;

4. Any further relief this Court deems just and equitable.

Respectfully submitted,

/s/Amy J. Luck
_____
Corey L. Tomlinson (OH#0081894)
Amy J. Luck (OH#0097280)
Robison, Curphey & O'Connell, LLC
Four SeaGate, Ninth Floor
Toledo, OH 43604
T: (419) 249-7900
F: (419) 249-7911
ctomlinson@rcolaw.com
aluck@rcolaw.com
*Attorneys for John F. Marrow*

## DEMAND FOR JURY TRIAL

 Plaintiff, by and through her counsel, hereby request a jury trial of the issues so triable, pursuant to Civ. R. 38.

            /s/Amy J. Luck
            _____
            Corey L. Tomlinson (OH#0081894)
            Amy J. Luck (OH#0097280)
            Robison, Curphey & O'Connell, LLC
            Four SeaGate, Ninth Floor
            Toledo, OH 43604
            T: (419) 249-7900
            F: (419) 249-7911
            ctomlinson@rcolaw.com
            aluck@rcolaw.com
            *Attorneys for John F. Marrow*